IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 9, 2012

**RICKY LEE MORGAN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-61      Mark J. Fishburn, Judge**

_____

**No. M2011-02129-CCA-R3-PC - Filed June 7, 2012**

_____

Much aggrieved by his convictions of aggravated rape and robbery and resulting 23-year sentence of imprisonment, the petitioner, Ricky Lee Morgan, filed a timely petition for post-conviction relief alleging that his guilty pleas were involuntarily and unknowingly entered due to the ineffective assistance of counsel. Following the appointment of counsel and an evidentiary hearing, the post-conviction court denied relief. Discerning no error, we affirm the post-conviction court's order.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Ricky Lee Morgan.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Sarah Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 4, 2009, the petitioner pleaded guilty to aggravated rape and robbery. Pursuant to his open plea, the State dismissed a related aggravated kidnapping charge. At the plea submission hearing, the State offered the following factual basis for the guilty pleas:

> [O]n September 18th of 2007, the victim [ ] was returning to her Warren Street residence when she was approached by the [petitioner]. The [petitioner] asked her for a cigarette, and the victim provided one as requested. The victim[,] who was on

foot walked towards the Bicentennial Mall . . . [,] and the [petitioner] walked with her. He identified himself as Ricky . . . . [T]he [petitioner] approached the victim and grabbed her by the front of her sweat shirt before throwing her to the ground . . . . The [petitioner] demanded sex from the victim, but the victim refused. He then held the victim to the ground and produced a small kitchen type knife from his pocket, which he then held to the victim's throat. . . . After a prolonged struggle, which included him choking her and striking her head against a metal handrail, the [petitioner] removed her pants and forcibly engaged in penile/vaginal intercourse. After ejaculating, the [petitioner] told the victim not to move for ten minutes, he then took her pants, one boot and her cell phone before fleeing the area on foot. The victim sustained obvious injuries . . . .

After viewing several lineups and not being able to identify her attacker . . . two more lineups were prepared. . . . [During] one of the lineups . . . [the victim] immediately identified the [petitioner] as her attacker. A rape kit was subsequently sent to the TBI, and the DNA from both the vaginal swab and [the victim's] underwear w[ere] shown to be a match beyond the world population to the [petitioner].

Following a detailed plea colloquy, the trial court accepted the petitioner's guilty pleas and set the case for a June 29, 2009 sentencing hearing. Following the testimony of the victim, the defendant's sister, and the defendant at the sentencing hearing, the trial court sentenced the defendant to 23 years' incarceration with service of one hundred percent for the aggravated rape conviction to be served concurrently with a six-year sentence for the robbery conviction.

On April 9, 2010, the petitioner filed a timely petition for post-conviction relief alleging that his guilty pleas were involuntarily and unknowingly entered as the result of trial counsel's ineffective assistance. In both his pro se petition and a subsequent amendment filed by counsel, the petitioner maintained that trial counsel told him that he would receive a sentence of 15 years' incarceration in exchange for his guilty pleas.

At the evidentiary hearing, trial counsel testified that he represented the petitioner for approximately one year. During that time, counsel spent time reviewing and explaining discovery materials and developing a trial strategy with the petitioner. Counsel said that the petitioner understood that the victim had identified him from a photographic

line-up and that deoxyribonucleic acid ("DNA") evidence confirmed him as the attacker. Consequently, counsel recalled that the petitioner candidly admitted raping the victim but steadfastly denied kidnapping the victim.

Counsel testified that an original plea offer extended by the State included a guilty plea to aggravated kidnapping in exchange for a 23-year sentence. Counsel recalled that the petitioner rejected this plea based upon his belief that he had not kidnapped the victim. On the eve of trial, counsel negotiated an agreement whereby the petitioner would plead "open" to aggravated rape and robbery in exchange for a dismissal of the aggravated kidnapping charge. Counsel testified, "I advised [the petitioner], in my honest opinion, I believe[d] the judge would max him out, but [the petitioner] agreed that the sentencing hearing would be his only shot at getting 15 years." Counsel said that he explained to the petitioner numerous times that the trial judge would determine his sentence. The petitioner agreed to the plea because "he wanted his shot at getting 15 years."

The petitioner testified that he was dissatisfied with counsel's representation and said,"[I]t was just like I represented myself because . . . he never did nothing for me." The petitioner maintained that he understood that he would be sentenced to 15 years. He claimed, in fact, that counsel "practically guaranteed" that he would receive a 15-year sentence. The petitioner testified in general that counsel "sold [him] out to the State" and claimed that counsel "could have worked and pushed a little harder to get [his] sentencing down." He acknowledged that he never denied "forc[ing] [him]self on [the victim]" but claimed that he was "just under the influence of alcohol and crack cocaine" at the time of the offenses. He testified that, at the time of the evidentiary hearing, he did not desire to go to trial but "just want[ed] to go back to the bargaining table and try to work out a deal" to get the 15-year sentence that he felt counsel had promised him.

In its September 20, 2011 written order, the post-conviction court found that the plea colloquy from the plea submission hearing reflected that the petitioner fully understood the consequences of his open guilty pleas and that the petitioner was in no manner guaranteed a 15-year sentence. Accordingly, the post-conviction court denied relief. The petitioner filed a timely notice of appeal.

In this appeal, the petitioner reiterates his claim that trial counsel's ineffective assistance rendered his guilty pleas unknowing and involuntary. We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-

conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland,* 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin*, 395 U.S. at 242-43); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) ("Certainly, a plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats.") (citing

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)); *see Sexton v. State*, 151 S.W.3d 525, 532 (Tenn. Crim. App. 2004) (stating that "the nature of the proceeding, the exchange between the trial court and the petitioner, and the relatively beneficial plea agreement reflect the petitioner's knowledge and understanding that [his] constitutional rights relative to the trial process were not to be asserted by [him] any further").

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the evidence does not preponderate against the findings of the post-conviction court. Trial counsel testified that he warned the petitioner that he was not guaranteed a 15-year sentence but that the petitioner felt that an open plea was "his only shot" at getting a sentence less than that offered by the State during earlier plea negotiations. At the plea submission hearing, the petitioner was fully apprised of his potential range of punishment by the trial court prior to making his plea. Furthermore, the transcript of the guilty plea submission hearing confirms that the petitioner understood that the choice to enter the guilty plea was his alone and that he entered the plea entirely of his own volition. That the petitioner would now like to "go back to the bargaining table and try to work out a deal" involving a 15-year sentence does not equate to a deprivation of the effective assistance of counsel. The petitioner has failed to establish any entitlement to post-conviction relief.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE